UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| KENDRICK MEDLOCK, # 263845, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:14-cv-721 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| BARRY FREED, et al., ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| ) | |

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff is currently an inmate at the St. Louis Correctional Facility (SLF). (docket # 32). This lawsuit arises out of alleged conditions of his confinement in September and October 2012 at the Carson City Correctional Facility (DRF). The defendants are Lieutenant Barry Freed, Captains Bradley Kilchermann and John Christiansen, Corrections Officers Robert Ward, Kent Ley, Thomas Thomsen, and Craig Schafer, and Assistant Resident Unit Supervisor (ARUS) Jennifer Gehoski.

Plaintiff alleges that on September 3, 2012, Lieutenant Freed denied his request for a transfer to another prison. Plaintiff alleges that he has a history of "gang bangers" not wanting to lock in a room with him because he is gay. He alleges that his cellmate, prisoner Williams, was a "gang banger," and had threatened to kill him because he did not want to live in a room with a homosexual. (docket # 2, Page ID 9, 12, 19). Before making any decision on plaintiff's request for a transfer, Lieutenant Freed researched plaintiff's history since his arrival at DRF and found that plaintiff had been moved several times to different cells because he could not get along with his cellmate. Plaintiff was the common denominator in the instances of cellmate problems and this request had the appearance that plaintiff was being manipulative. (*Id.* at Page ID 9, 12-13, 19-20; docket # 2-1,

Page ID 28).  Plaintiff states that his cellmate, prisoner Williams, was moved to a new cell away from plaintiff, but was not transferred to another housing unit.  (docket # 2, Page ID 9).

Plaintiff alleges that on September 17, 2012, during Captain Kilchermann's investigation of plaintiff's grievance regarding Lieutenant Freed's decision, Kilchermann purportedly told plaintiff that he should "stand up to those gang bangers, fight them," and that if he would "stop being gay, [he] wouldn't have all these problems."  (*Id.* at Page ID 10, 20).

Plaintiff alleges that sometime after his interview with Kilchermann on September 17, 2012, but before September 19, 2012, he somehow informed Captain Christiansen and Corrections Officers Ward and Ley that his life was in danger because he feared that "gang bangers" were going to stab him.  (*Id.* at Page ID 10, 12, 20).

Plaintiff asserts that he gave a note to Officer Thomsen on September 25, 2012, which asserted that gang bangers had threatened him with knives at breakfast to which Thomsen purportedly replied, "This is prison."  (*Id.* at Page ID 10, 13, 20).

Plaintiff alleges that on September 19, 26, and October 1, 2012, he asked for help from ARUS Gehoski, but she refused to move him.  (*Id.* at Page ID 10, 13, 20).  On October 2, 2012, when plaintiff reported that the threats were becoming more intense, ARUS Gehoski wrote down plaintiff's name and indicated that she would look into it.  (*Id.* at Page ID 10, 13, 20).

On October 2, 2012, at about 1:45 p.m., plaintiff was involved in an altercation in his cell with his former cellmate prisoner Williams.  Officer Schafer gave both prisoners major misconduct citations for fighting.  Plaintiff received medical treatment for the injuries that he sustained in the fight.  (*Id.* at Page ID 10-11, 14, 21; docket # 2-1, Page ID 30).

On July 7, 2014, plaintiff filed this lawsuit. He alleges that all defendants were deliberately indifferent to the risk that he would be assaulted by prisoner Williams on October 2, 2012, in violation of his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause. (docket # 2-1 at Page ID 14-16). Plaintiff sues all defendants in their individual capacities and seeks an award of damages. (*Id.* at Page ID 16-18, 22).

The matter is now before the court on a motion for summary judgment by defendants Freed, Christiansen, Ward, Kent, Ley, Thomsen, Schafer, and Gehoski (docket # 20) and a motion for summary judgment by defendant Kilchermann[1] (docket # 25). Both motions for summary judgment are based on the affirmative defense provided by 42 U.S.C. § 1997e(a). Plaintiff has filed his response.[2] (docket #s 28, 31). For the reasons set forth herein, I recommend that defendant Kilchermann's motion for summary judgment (docket # 25) be granted and that all plaintiff's claims against him be dismissed. I recommend that the motion for summary judgment defendants Freed, Christiansen, Ward, Kent, Ley, Thomsen, Schafer, and Gehoski (docket # 20) be granted in part and denied in part. I recommend that the motion be granted as to defendants Freed, Christiansen, Ward, Kent, Ley, Thomsen, and Schafer, and that all plaintiff's claims against these defendants be

---

[1] Defendant Kilchermann filed a separate motion for summary judgment because his waiver of service (docket # 23) was not filed until two days after the other defendants had filed their motion for summary judgment.

[2] Although plaintiff filed a document captioned as a "Declaration in Opposition to Defendants['] Motion for Summary Judgment," that document must be considered as a brief. The two-page document consists of argument. Further, it fails to satisfy the statutory requirements for an unsworn declaration under 28 U.S.C. § 1746 because it does not provide a statement of facts made under penalty of perjury. *See Lauderdale v. Wells Fargo Home Mort'g*, 552 F. App'x 566, 571 (6th Cir. 2014) ("[U]nsworn declarations cannot be considered as evidence for summary judgment unless made under penalty of perjury, certified as true and correct, dated, and signed.").

dismissed. I recommend that the motion be denied as to defendant Gehoski because plaintiff properly exhausted his administrative remedies against her on his claim that she was deliberately indifferent to the risk that plaintiff would be assaulted by prisoner Williams on October 2, 2012.

## **Applicable Standards**

### A. **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has

the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL

PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B.     Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed"

complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[3] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates

---

[3] A copy of the policy directive is found in the record. *See* docket # 21-2, Page ID 95-101.

must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or her designee. *Id* . at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals

Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC). He is currently an inmate at the St. Louis Correctional Facility (SLF). (docket # 32). He named the following MDOC employees at the Carson City Correctional Facility (DRF) as defendants: Lieutenant Barry Freed, Captains Bradley Kilchermann and John Christiansen, Corrections Officers Robert Ward, Kent Ley, Thomas Thomsen, and Craig Schafer, and Assistant Resident Supervisor Jennifer Gehoski.

Plaintiff did not file any grievance against defendants Kilchermann, Ward, Ley, or Thomsen and pursue such a grievance through a Step III decision before filing this lawsuit. He did file two grievances through Step III which contained references to other defendants, and those grievances and related appeals are examined in detail below.

### 1. Grievance No. DRF-12-09-2105-17a

On September 17, 2012, DRF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. DRF-12-09-2105-17a. In this grievance plaintiff complained that a threat by Lieutenant Freed to issue a Notice of Intent (N.O.I) against plaintiff constituted ethnic intimidation:

> In conduct unbecoming a state employee, Lt. Freed, in an act of ethnic intimidation stopped me on walk to state I'm the common denominator in several moves of inmates & myself. He threatened to write a N.O.I. if another move transpires. Lt. Freed knows I'm a gay inmate and as gang bangers keep being placed into my room. Due to perception of others they leave or they force me to leave. Staff knows this but still tries to create a hostile environment by not allowing the inmates to move. Some of the other homophobe officers go further to make homosexual [illegible] to provide something derogatory. For Lt. Freed to threaten me with a N.O.I [illegible] be peaceful and [illegible] my [illegible]. I now feel very vulnerable and discriminated against at this prison. I'm very uncomfortable. Grievance was returned to me on 9/10/12 for no reason at all. It was placed in mail on 9-7-12.

(docket # 21-3, Page ID 123). On September 17, 2012, the grievance against Lieutenant Freed for ethnic intimidation was denied at Step I. (docket # 21-3, Page ID 124). The Step I response noted that there was evidence indicating that plaintiff's inability to get along with cell mates was an attempt to manipulate his prison housing assignment:

> On 9/17/12 I interviewed Lt. B. Freed and we discussed this grievance. He states that prisoner Medlock approached him on the walkway claiming that he needed to be moved to a different cell because he and his current cell mate were having issues. He says when he returned that day to control center he researched the history of Medlock since his arrival at DRF and he saw that Medlock had been moved several times to different cells because he could not get along with his cell mate. He said he got back with prisoner Medlock and

-10-

> explained that it appears that he is the common denominator and perhaps he [was] being manipulative.
>
> On 9/17/12 I attempted to interview prisoner Medlock however he was very agitated and would not cooperate in the grievance interview process. He became very loud and argumentative and insisted that Lt. Freed was wrong and should have moved him out of that cell immediately. He continued telling me that he is a gay prisoner and should not be locked in the same cell with a "gang banger."
>
> He insisted that this grievance continue to step II of the grievance procedure.
>
> I do not see any violation of PD 03.03.130 "Humane Treatment and Living Conditions for Prisoners."

(*Id.*). Plaintiff's appeal was denied at Step II, and on February 12, 2013, the Grievance and Appeals Section issued its Step III decision affirming the denial of plaintiff's grievance. (docket # 21-3, Page ID 120, 122).

### 2. Grievance No. DRF-12-10-2326-03b

On October 11, 2012, DRF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. DRF-12-10-2326-03b. (docket # 21-3 at Page ID 117-18). In this grievance, plaintiff's primary complaint was that Corrections Officer Shafer had issued a misconduct citation against plaintiff and prisoner Williams for fighting rather than only charging prisoner Williams, the purported aggressor. (*Id.* at Page ID 118). Plaintiff made passing references to Inspector Christiansen and Lieutenant Freed. (*Id.*). He made much more specific allegations against ARUS Gehoski. He claimed that in the morning and afternoon of October 2, 2012, he had asked Gehoski to move him to a different unit because there was an urgent risk that he would be assaulted, that she did not move him to another unit, and that he was assaulted by prisoner Williams later that day. His grievance stated as follows:

> On 10/2/12, after lunch I tried speaking w/ ARUS concerning urgent move she told me not right now. By the time I got to room, inmate tried to force his way in, this happened again as big yard was broken. After big yard and 15 minute after small yard was broken officers

-11-

> observed my door as I was in room serving L.O.P. sanction and inmate Williams rushed into room and started assaulting me w/weapon. C/O Shafer was officer running down hall to room.
>
> On 10/2/12 after lunch I tried speaking w/ARUS Gehoski concerning urgent move as I already spoke w/her that morning. She told me not right now! By the time I made it to my room inmate tried to force his way into room, this happened again as they were coming back from big yard. After small yard was broken at 1:30 p.m. I was still in room serving L.O.P. sanctions and at approximately 1:45 p.m. staff broke my door to allow inmate Williams into my room w/out consent with a weapon to assault me. C/O Shafer was officer running down hall to room and he wrote misconduct on both as for a fight and that was only to cover up violations of code of ethics, humane treatment, dereliction of duties, Dept. work rules, and M.C.L. 19.142(1)(e) that states institution "SHALL" "NOT" be operated in a manner that annoys, harasses, assaults, or disturbs an inmate cared for under the control of the Board or Dept. having jurisdiction. Inspector Christiansen has blatantly denied institution's liability along with Lt. Freed. This was all under Warden Smith's watch and I ask for immediate consideration.

(docket # 21-3, Page ID 117-18).

The investigation regarding the misconduct charges against plaintiff and Williams revealed that prisoner Williams had entered plaintiff's cell with a weapon. Plaintiff had prepared his own weapon. Plaintiff had elected to arm himself and confront Williams rather than fleeing or seeking protective custody. (docket # 21-3, Page ID 119). The Step I grievance response indicated that plaintiff had been transferred to the G Robert Cotton Correctional Facility (JCF) on October 18, 2012, and that he had received a misconduct charge for fighting. (*Id.* at Page ID 117). Plaintiff pursued an unsuccessful appeal. (*Id.* at Page ID 116). On April 17, 2013, the Grievance and Appeals Section entered a Step III decision which affirmed the denial of plaintiff's grievance. (*Id.* at Page ID 114).

On July 7, 2014, plaintiff filed this lawsuit.

## **Discussion**

Defendants have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a). Plaintiff failed to exhaust all claims asserted with the exception of his claim that defendant Gehoski violated his Eighth Amendment rights by deliberate indifference to the risk that plaintiff would be assaulted by prisoner Williams on October 2, 2012.

Grievance No. DRF-12-09-2105-17a was against Lieutenant Freed was for ethnic intimidation in threatening to issue a Notice of Intent against plaintiff. Grievance No. DRF-12-10-2326-03b was primarily against Officer Shafer for charging plaintiff with misconduct in fighting with prisoner Williams on October 2, 2012. Plaintiff has no claim against Officer Shafer for charging him with misconduct for fighting. Plaintiff does not even allege whether or not he was found guilty of the misconduct charge. Plaintiff's passing reference to Inspector Christiansen and Lieutenant Freed in Grievance No. DRF-12-10-2326-03b did not exhaust the claims that he is asserting against those individuals in this lawsuit. By contrast, plaintiff's grievance specifically claimed that he had spoken with defendant Gehoski twice on October 2, 2012, regarding his urgent need to be moved because he was in danger of being assaulted, and that he was assaulted later that day. I find that plaintiff did exhaust the Eighth Amendment claim that he is asserting against defendant Gehoski.

Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. Plaintiff did not properly exhaust any claim other than his claim against defendant Gehoski. All other defendants have carried their burden on the affirmative defense and are entitled to dismissal of plaintiff's claims.

### **Recommended Disposition**

For the foregoing reasons, I recommend that defendant Kilchermann's motion for summary judgment (docket # 25) be granted and that all plaintiff's claims against him be dismissed. I recommend that the motion for summary judgment by defendants Freed, Christiansen, Ward, Kent, Ley, Thomsen, Schafer, and Gehoski (docket # 20) be granted in part and denied in part. I recommend that the motion be granted as to defendants Freed, Christiansen, Ward, Kent, Ley, Thomsen, Schafer and that all plaintiff's claims for damages against those defendants be dismissed. I recommend that the motion be denied as to defendant Gehoski because plaintiff properly exhausted his administrative remedies against her on his claim that she was deliberately indifferent to the risk that plaintiff would be assaulted by prisoner Williams on October 2, 2012.

Dated: August 31, 2015 /s/ Phillip J. Green
United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).